190 Cal.App.3d 888 (1987)
235 Cal. Rptr. 680
In re LORENZO T., a Minor.
VENTURA COUNTY PUBLIC SOCIAL SERVICES AGENCY, Petitioner and Respondent,
v.
MICHELLE R., Objector and Appellant.
Docket No. B019421.
Court of Appeals of California, Second District, Division Six.
March 26, 1987.
*889 COUNSEL
Steve Pell, under appointment by the Court of Appeal, for Objector and Appellant.
James L. McBride, County Counsel, and Harry E. Barnes, Assistant County Counsel, for Petitioner and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
GILBERT, J.
Here we hold that that a juvenile court order to initiate proceedings to free a minor from the custody and control of his parents *890 (Welf. & Inst. Code, § 366.25;[1] Civ. Code, § 232) is appealable. Nevertheless, we affirm the order from which Michelle R. appeals.

FACTS
Lorenzo T. was born August 21, 1984, while his mother Michelle R. was incarcerated in the Ventura School for Girls (Ventura School) for illegal drug use. The father, Alex T., was serving a term on drug-related charges in the California Youth Authority (CYA) at Chino. On August 27 the court ordered the infant detained in foster care pursuant to a Public Social Services Agency (PSSA) petition.
On October 1 Lorenzo T. was adjudicated a dependent child (§ 300, subds. (a) and (b)), his custody was removed from his parents and he was placed in a foster home under PSSA supervision. Dependency was continued at each review. A permanency planning hearing (§ 366.25, subd. (a)) was held January 6, 1986, because the mother's sentence extended beyond the statutory 18-month period for reunification and there appeared to be no substantial probability Lorenzo T. could be placed in her custody.
Michelle R.'s history of illegal activities, including drug and alcohol abuse, started at 13. She had been incarcerated ever since her son's birth except for a brief interval following her release from Ventura School January 27, 1985. Within 15 days she was rearrested for being under the influence of a controlled substance (PCP). Her release from Ventura School was not anticipated before May 1986.
On return to Ventura School in July 1985 Michelle R. had biweekly hour long visits with Lorenzo T., with a one month interruption when he suffered a minor injury, and she interacted well with him. Michelle R. was unable to undertake a residential drug treatment program while at Ventura School, but she participated in support services and was interested in reunification. PSSA, however, had no way to evaluate her ability to care for her son in an independent living situation. The antisocial behavior she exhibited before incarceration and during her release indicated it was unlikely she would be able to provide a healthy environment for him. Michelle R. testified she loved her son, hoped eventually to be able to take care of him, and requested visitation wherever he was placed.
The father did not appear, but wrote to the court stating he was not interested in reunification or in continuing his relationship with the mother.
*891 Lorenzo T. had been continuously cared for by his foster parents since January 19, 1985. The social worker reported he was thriving in their home and his foster parents had become his psychological parents. The foster parents stated in a letter that they had treated Lorenzo T. like their own child, provided him with medical treatment, nurtured him through fears and illness, and wished to make him a permanent member of their family should he be available for adoption.
The juvenile court concluded, among other things, that return of the minor to the physical custody of the parents would create a substantial risk of detriment to his physical or emotional well-being. The juvenile court further found: "The extent of progress to alleviate the causes necessitating placement in foster care has been minimal; ... There is not a substantial probability the minor will be returned home within six months; [and] [¶] ... The minor is adoptable." The court concluded "that the minor is adoptable and appears to be eligible for consideration for further court action to terminate parental rights pursuant to section 232 of the California Civil Code.... [¶] Therefore, the Court orders the County Counsel to initiate an action under Civil Code section 232...." The matter was scheduled for review in six months.

DISCUSSION

I
(1a) We reject respondent's contention that the order requiring the filing of a parental termination action is subject to dismissal because it is in effect preliminary only. (In re Candy S. (1985) 176 Cal. App.3d 329 [222 Cal. Rptr. 43].) Section 395 which governs appeals in dependency cases provides in pertinent part that: "... any subsequent order [after a judgment in a proceeding under § 300] may be appealed from as from an order after judgment...."
(2) Parental rights to conceive and raise children are deemed essential, basic civil rights of man, rights far more precious than property, which should be accorded a high degree of protection. (Stanley v. Illinois (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208].) It is established that "[p]arenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood." (In re Carmaleta B. (1978) 21 Cal.3d 482, 489 [146 Cal. Rptr. 623, 579 P.2d 514].) Therefore, termination of parental custody must be supported by a showing that nonparental custody "is essential to avert harm to the child." (In re B.G. (1974) 11 Cal.3d 679, 699 [114 Cal. Rptr. 444, 523 P.2d 244]; Civ. Code, § 4600, subd. (c).)
*892 The parenting right may thus be compelled to yield to rights inherent in the child. "More recently the primacy of another consideration [than the traditional parental right or preference doctrine] has evolved in the reasoning of courts, legislatures and commentators which have focused on the child's well-being, seeking to ascertain the `best interest' of and the `least detrimental alternative to the child.' Our Legislature's concern is manifest in its direction that the statutes concerning the termination of parental rights `shall be liberally construed to serve and protect the interests and welfare of the child.' (§ 232.5....)" (In re Angelia P. (1981) 28 Cal.3d 908, 916 [171 Cal. Rptr. 637, 623 P.2d 198]; In re Mark K. (1984) 159 Cal. App.3d 94, 107-108 [205 Cal. Rptr. 393].) Dependency proceedings therefore protect the welfare of the minor and safeguard the right of the parents to raise their own child. (In re La Shonda B. (1979) 95 Cal. App.3d 593, 599 [157 Cal. Rptr. 280].)
Section 366.25 provides in pertinent part: "(a) In order to provide stable, permanent homes for children, a court shall, if the minor cannot be returned home pursuant to subdivision (e) of Section 366.2, conduct a permanency planning hearing to make a determination regarding the future status of the minor no later than 12 months after the original dispositional hearing in which the child was removed from the custody of his or her parent, ... and in no case later than 18 months from the time of the minor's original placement...."
Subdivision (d) of section 366.25 provides: "If the court determines that the minor cannot be returned to the physical custody of his or her parent ... and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders: [¶] (1) If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code...."
Once the juvenile court makes the section 366.25 findings, it is required to instruct the county counsel to initiate Civil Code section 232 proceedings. The order for commencement of termination proceedings is an order after judgment of dependency. (Cf. In re Syson (1960) 184 Cal. App.2d 111 [7 Cal. Rptr. 298].) Furthermore, there can be no doubt Michelle R. is a party aggrieved (Code Civ. Proc., § 902) since the order impliedly determines permanent nonparental placement is necessary and the mother to protect her interests will be required to defend an action for termination of parental custody.
*893 "In most dependency matters the focus is against the parent and the prospect faced is the drastic result of loss of his child. Although legal scholars may deemphasize the adversary nature of dependency proceedings and characterize the removal of the child from parental custody as nonpunitive action in the best interests of the child, most parents would view the loss of custody as dire punishment.... [T]he section [300] petition is in a sense brought against the parents to deprive them of a valued right." (Lois R. v. Superior Court (1971) 19 Cal. App.3d 895, 901 [97 Cal. Rptr. 158].)
(1b) We find the holdings of In re Candy S., supra, 176 Cal. App.3d 329 and In re Lisa M. (1986) 177 Cal. App.3d 915 [225 Cal. Rptr. 7] (same court) inapposite and unpersuasive. In Candy S., the juvenile court merely referred the case for possible termination proceedings rather than ordering their commencement, and in Lisa M., the same court noted that an "order of reference to initiate proceedings to terminate parental control is not itself appealable ...," citing Candy S. (In re Lisa M., supra, at p. 918.) The court then declared the appeal moot because of the intervening Civil Code section 232 order terminating the mother's parental rights. (Id., at p. 919.)
We agree with the reasoning in In re Joshua S. (1986) 186 Cal. App.3d 147 [230 Cal. Rptr. 437]. Section 366.25 affords both procedural safeguards to the parties and sets out factual predicates to the making of the authorization order. Unless the authorization order is appealable, the statutory requirements are meaningless. (Id., at p. 154.) Moreover, "[a]ny order emanating from the juvenile court which `affects the substantial rights of the juvenile,' including a plan for the adoption of the child, is appealable." (Id., at p. 155.) Since the order impliedly determines that out-of-home placement is necessary and Michelle R. will have to defend a parental termination action, there is no question that she is aggrieved by such order. Additionally, Michelle R. would be precluded in the superior court Civil Code section 232 proceedings, or on an appeal from those proceedings, from alleging any error the court made at the permanency planning hearing, e.g., not ordering legal guardianship in lieu of adoption. (In re Clarence I. (1986) 180 Cal. App.3d 279, 282 [225 Cal. Rptr. 466].)

II-IV[*]
.... .... .... .... ....
The juvenile court's findings pursuant to section 366.25 support its order *894 that county counsel institute proceedings to terminate parental custody and control. (Civ. Code, § 232.)
The judgment is affirmed.
Stone, P.J., and Abbe, J., concurred.
NOTES
[*] Pursuant to rule 976.1 of the California Rules of Court, this opinion is certified for publication with the exception of parts II through IV of the Discussion.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.
[*] See footnote, ante, page 888.