191 Cal.App.3d 398 (1987)
236 Cal. Rptr. 480
In re SARAH F. et al., Persons Coming Under the Juvenile Court Law.
SONOMA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
LINDA M., Defendant and Appellant.
Docket No. A034198.
Court of Appeals of California, First District, Division Two.
April 27, 1987.
*399 COUNSEL
Annette Lombardi, under appointment by the Court of Appeal, and Stephen C. Becker for Defendant and Appellant.
James P. Botz, County Counsel, and Richard W. Ergo, Deputy County Counsel, for Plaintiff and Respondent.
*400 OPINION
ROUSE, J.
Mother appeals an order directing the county counsel to file a petition for termination of parental rights (Civ. Code., § 232) which was issued after a permanency planning hearing held pursuant to Welfare and Institutions Code section 366.25.[1]

Facts and Procedural History
Sarah F., who was born October 31, 1983, and David F., who was born October 24, 1982, are the children of Linda M. Both children were taken into custody on January 8, 1984, and two days later a petition was filed seeking to have them declared dependent children on grounds that they were destitute and lacking the necessities of life and that their half-brother, Timmy M., had been tied to his bed with an electrical cord. (§ 300, subds. (b), (d).) At a jurisdictional hearing held January 26, 1984, the children were declared dependents of the court.
A six-month review hearing was held as to the status of the children on July 24, 1984. (§ 366.) A hearing on permanency planning for the children was continued first in January and again in February 1985. At the hearing, which had been put over to April 3, 1985, the department of social services recommended a six-month delay to permit additional time for reunification. The court adopted that recommendation, finding that there was a substantial probability that the children would be returned to the physical custody of their mother within six months. (§ 366.25, subd. (c).)
On November 11, 1985, a hearing apparently combining both an 18-month review (§ 366) and the permanency planning hearing (§ 366.25) was held. On November 25, 1985, the juvenile court issued an order finding that there was no substantial probability that the children could be returned to their mother within six months, and directing that the matter be "transferred to the County Counsel for filing of a Petition pursuant to Civil Code Section 232 within 45 days of today's date." It is from this order of the juvenile court, made under section 366.25, that the mother seeks to appeal.

I.
(1a) The first question is whether this order by the juvenile court is an appealable order. Section 395 provides that "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order *401 after judgment...." A juvenile court "judgment, order or decree specified in section 395" which results from a proceeding undertaken in a section 300 action may be appealed by the county, the minor, the parent or guardian. (Cal. Rules of Court, rule 1396(b).)
Linda M., the mother of the two children, argues that an order issued after a section 366.25 permanency planning hearing is an appealable order within the definition set out in section 395.
Two cases decided by this court and a recent case from the Second District have taken the position that an order after a section 366.25 hearing which refers the case to the county counsel for institution of a Civil Code section 232 hearing is not an appealable order. (In re Debra M. (1987) 189 Cal. App.3d 1032, 1039 [234 Cal. Rptr. 739]; In re Lisa M. (1986) 177 Cal. App.3d 915, 918, 919 [225 Cal. Rptr. 7]; In re Candy S. (1985) 176 Cal. App.3d 329, 331 [222 Cal. Rptr. 43].) Two other recent cases, however, have adopted the opposite view to hold that a "reference" or "authorization" order is an appealable order. (In re Lorenzo T. (1987) 190 Cal. App.3d 888 [235 Cal. Rptr. 680]; In re Joshua S. (1986) 186 Cal. App.3d 147, 152 [230 Cal. Rptr. 437].)
The first published case to address the question of appealability of the order was In re Candy S., supra, 176 Cal. App.3d 329. In Candy S. the court concluded that an order referring a case to the county for commencement of a Civil Code section 232 action was not appealable because until that action was both instituted and concluded with a termination of parental rights the parent was not an aggrieved party (Code Civ. Proc., § 902) suffering from immediate injury as a result of the reference ruling. (In re Candy S., supra, 176 Cal. App.3d 329, 331.) As the court pointed out, the county might choose not to institute the Civil Code section 232 proceeding, and even if it did that proceeding might be determined in the parent's favor. (Ibid.) Thus, the court reasoned, the reference order issued after the section 366.25 hearing was not appealable. The same division of this court then applied this rule without further analysis in its subsequent decision in In re Lisa M., supra, 177 Cal. App.3d 915, 918.)
In re Debra M., supra, 189 Cal. App.3d 1032 recently handed down by the Second District, followed the reasoning of Candy S. The court stressed what it saw as the interim nature of the reference order and found support for its view that the order was nonappealable in the Legislature's intent to expedite the adoption process. (Id., at pp. 1038-1039.)
While these three cases have found the reference order to be nonappealable, there is a separate line of authority, consisting of two opinions, holding *402 the eference order to be appealable. The first of these, In re Joshua S., supra, 186 Cal. App.3d 147, involved a combined dependency review and permanency planning hearing. The Joshua S. court expressly found the reference order was appealable. (Id., at p. 155.) It did so after rejecting the argument that the juvenile court order was not appealable because the mother was not an "aggrieved party" within the meaning of Code of Civil Procedure section 902. (See In re Candy S., supra, 176 Cal. App.3d 329, 331.) (2) Instead, it correctly pointed out that the appealability of juvenile court orders is governed, not by the Code of Civil Procedure, but by the Welfare and Institutions Code. (§§ 395, 800.) It is clear from the language of rule 1396(b), California Rules of Court, that a parent may appeal from an otherwise appealable order in a dependency proceeding.
(1b) The question is not really one of who may appeal, but whether the reference order itself is appealable. In Joshua S., Justice Pauline Hanson concluded that the order was appealable because she found it to be a "subsequent order" within the meaning of section 395. (Id., at pp. 150-152.) Furthermore, she noted that unless the order is appealable the various findings which the juvenile court is obliged to make under section 366.25 before it orders permanency planning and the other procedural safeguards prescribed by the statute are unenforceable and therefore "meaningless." (Id., 186 Cal. App.3d 147, 154.) We concur.
The reasoning of Joshua S. has most recently been followed in the case of In re Lorenzo T., supra, 190 Cal. App.3d 888. Lorenzo T. is especially similar to the case before us because in it there was no express order terminating reunification efforts as there was in Joshua S. Thus the only issue before the court was whether the reference order was appealable. The Lorenzo T. court concluded that the order to the county counsel "for commencement of termination proceedings is an order after judgment of dependency" and therefore is an appealable order under section 395. (Id., at pp. 891, 892.) The court emphasized "[s]ection 366.25 affords both procedural safeguards to the parties and sets out factual predicates to the making of the authorization order." (Id., at p. 893.) We find the reasoning of Joshua S. and Lorenzo T. persuasive.
The dissent argues that the reference is merely an "authorization" from the court to the county or state agency and that it therefore is not an order. "Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order." (Code Civ. Proc., § 1003.) The order involved here is a delegation of authority to the county or state agency to decide whether or not to institute a parental rights termination action under Civil Code section 232. Regardless of what the county or state agency decides to do, it acts pursuant to the court's order. We are not *403 persuaded that the question of appealability turns on the Legislature's use of the verb "authorize" in lieu of "order."
If the reference order is not appealable and a termination of parental rights proceeding under Civil Code section 232 is instituted, the parent will only be able to appeal from an adverse decision in the superior court section 232 proceeding. (3) Termination of parental rights under that code section moots any error in the earlier juvenile court proceedings. (See In re Terry E. (1986) 180 Cal. App.3d 932, 946, fn. 5 [225 Cal. Rptr. 803]; In re Lisa M., supra, 177 Cal. App.3d 915, 919; but see In re Kristin B. (1986) 187 Cal. App.3d 596, 605 [232 Cal. Rptr. 36].)
(1c) The appealability of the reference order cannot turn on whether or not it is accompanied by an order which expressly terminates reunification efforts. As a practical matter the institution of a permanent plan for the child generally brings to an end any county-offered reunification services. (§ 366.2, subd. (e); Civ. Code, § 232, subd. (7); In re Clarence I. (1986) 180 Cal. App.3d 279, 283 [225 Cal. Rptr. 466] [once Civ. Code, § 232 proceeding has begun superior court has discretion to order reunification, but it need not do so].)
Where a reference order does expressly terminate reunification efforts, the effect of the order may indeed have substantial impact upon the rights of the mother and the child. For example, without any reunification assistance from the county in visiting the child, the parent may be forced to rebut a charge in the section 232 action of abandonment based on "only token efforts" to communicate with the child. (Civ. Code, § 232, subd. (1).) We do not face that problem here because the juvenile court's reference order expressly permits the mother continued visitation while the section 232 action is pending.
It was surely the intent of the Legislature in enacting the new scheme of juvenile law adopted in 1982 to bring dependency actions to a faster resolution  either by returning the child to its parents or freeing it for adoption. (Stats. 1982, ch. 978, §§ 1-78, pp. 3524-3557; see Review of Selected 1982 California Legislation (1982-1983) 14 Pacific L.J. 667.) Thus, it could be argued that permitting appeal from reference orders after section 366.25 hearings would frustrate the purpose of the statutory scheme by causing further delay. As Justice Pauline Hanson notes, however, since dependency review orders are appealable, and they often are made in conjunction with the permanency planning hearing, such additional delays caused by appeals from reference orders are not likely to significantly slow the juvenile process. (In re Joshua S., supra, 186 Cal. App.3d 147, 154.)
Because the reasoning of Joshua S. and Lorenzo T. seems to take account of what is in reality, if not on paper, the drastic step of referring a case for *404 termination of parental rights, they are, we believe, the sounder approach. In light of our conclusion that the reference order from a permanency planning hearing held pursuant to section 366.25 is appealable, we proceed to address the merits of the mother's claim.

II.
(4) Linda M. contends that the juvenile court erred in ordering a permanency plan for the children after finding that "there is not a substantial probability that" they would be returned to her care within six months. She contends that there is not substantial evidence to support this determination.
The court's order, issued after it had considered both the documentary evidence and the testimony presented at the hearing, found Linda M. was "unable to adequately meet the needs of these two minors who have special needs." In her review of the evidence the mother focuses only upon the testimony which was given at the hearing.[2] She argues that this testimony was insufficient to demonstrate that she was unable to care for the two minors. Based upon our own review of all the evidence before the court, we find that there is substantial evidence to support the court's finding.
Dr. Gershom Thompson, a psychiatrist who had been most recently treating the mother, testified that Linda M. had not developed, through therapy, an ability to avoid a relationship with the children's abusive father nor did she have any real understanding of the effects of abuse and neglect upon the children. He also testified that, even if she could avoid a relationship with their father, she would be vulnerable to similar relationships with other men likely to exploit her and abuse the children. This diagnosis was strikingly similar to that of the mother's prior therapist, social worker Judith LaTendresse. Ms. LaTendresse had terminated her therapy of the mother when she realized that Linda M. was unable to accept the fact that the interests of the children required her to end her relationship, however tenuous, with their father.
Finally, Dr. Thompson also stated that he believed Linda M. would not be able to handle these two children in addition to her other two small children, Timmy, then four, and Michael, an infant, who were presently in her care. Timmy, the child whose mistreatment originally led to the dependency proceeding, was returned to his mother's care in August 1985. He is apparently a hyperactive child who has behavior problems. His siblings, Sarah and *405 David, have also exhibited behavioral and developmental difficulties; some of their behavior problems seem to be triggered by visits with their parent or parents. Dr. Kenneth Waldron, a clinical psychologist who evaluated Sarah and David, concluded that these difficulties were the result of "environmental problems" when they were younger and concluded it was "essential" they be placed soon in a home that could provide "a good deal of structure and guidance...."
Three witnesses testified on the mother's behalf at the hearing. Despite their generally positive appraisals of Linda M.'s parenting abilities, two of them conceded that the problems of raising two children were substantially different from those involved in raising four. Only the homemaker, Lorna Remy, testified that she believed the mother would be able, within six months, to resume custody of all four children. Although her opinion was based on her observation of the mother with all four children, it was derived from only two months of contact with the family.
While the evidence before the court was not uncontradicted, we find there was substantial evidence to support the court's finding that there was not a substantial probability that the minors, Sarah and David, could return to the custody of their mother within six months.
The order is affirmed.
Kline, P.J., concurred.
BENSON, J.
I respectfully dissent.
I agree that the Welfare and Institutions Code sections discussed by the majority govern the appealability question in this case. I also agree that the question is not who may appeal but whether the authorization is appealable. But I must dissent from the majority opinion for two reasons.
First, section 366.25,[1] as amended in 1984, does not allow the juvenile court to order the institution of a Civil Code section 232 proceeding. It now can only authorize the appropriate agency to institute such a proceeding, and this authorization does not amount to an appealable order. Second, In re Debra M. (1987) 189 Cal. App.3d 1032 [234 Cal. Rptr. 739], a recent decision in which the Second Appellate District followed In re Candy S. (1985) 176 Cal. App.3d 329 [222 Cal. Rptr. 43], in my judgment presents the more persuasive policy analysis in cases like this one.
*406 In holding that a "reference order" from a section 366.25 permanency planning hearing is appealable, the majority relies on In re Joshua S. (1986) 186 Cal. App.3d 147 [230 Cal. Rptr. 437], and In re Lorenzo T. (1987), 190 Cal. App.3d 888 [235 Cal. Rptr. 680]. Joshua S. involved a joint review and permanency planning hearing. The court noted the juvenile court's order to terminate reunification efforts and concluded that this order was appealable. Such an order, the court reasoned, affects the substantial rights of the child and, therefore, constituted a "subsequent order" within the meaning of section 395. (Id., at pp. 151-152.) The court went on to discuss what it called the section 366.25 "reference order" or "authorization order" directing the appropriate agency to institute proceedings under Civil Code section 232 to permanently sever the parent-child relationship.
Lorenzo T., supra, 190 Cal. App.3d 888, involved a permanency planning hearing at which the court ordered the county counsel to initiate a proceeding under Civil Code section 232 to terminate parental rights. The court concluded: "Once the juvenile court makes the section 366.25 findings, it is required to instruct the county counsel to initiate Civil Code section 232 proceedings. The order for commencement of termination proceedings is an order after judgment of dependency." (Id., at p. 892.)
Neither the Joshua S. nor the Lorenzo T. courts recognized the impact of a 1984 amendment to section 366.25, subdivision (d)(1). This amendment made a significant change in what a juvenile court may do at a permanency hearing. The relevant part of this provision now reads:
"(d) If the court determines that the minor cannot be returned to the physical custody of his or her parent or guardian and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders:
"(1) If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code unless the court finds any of the following conditions exist...."
The amendment to subdivision (1) substituted, "the court shall authorize the appropriate county or state agency to proceed to free the minor" in place of "the court shall order the county counsel, or if there is no county counsel, the district attorney, to initiate an action to declare the minor permanently free...."[2] (Italics added.) As the statute now reads, the juvenile court shall *407 authorize the appropriate agency to institute a proceeding under section 232 of the Civil Code, but it cannot order the institution of this proceeding.
The Lorenzo T. court quoted the relevant portion of this amended statute but apparently did not recognize the changes made by the amendment. The court even criticized Candy S., supra, 176 Cal. App.3d 222 because "the juvenile court merely referred the case for possible termination proceedings rather than ordering their commencement...." (In re Lorenzo T., supra, 190 Cal. App.3d at p. 893.)
The Joshua S. court acknowledged this amendment and even noted that such a "reference" is not binding upon anyone. The court said: "As pointed out in Candy S., the reference or authorization is not binding on the Department of Public Social Services (DPSS). It may decline to pursue termination at that time. (See In re Lisa M., supra, [177 Cal. App.3d 915] at p. 918.)" (In re Joshua S., supra, 186 Cal. App.3d 147, 154.) But the court did not consider how the permissive nature of the authorization to institute Civil Code section 232 proceedings might preclude it from being an appealable order. Although the court concluded that terminating reunification efforts affects the substantial rights of the parties,[3] it did not discuss how such an authorization alone, as in this case, could affect the substantial rights of the child and therefore be an appealable order.
The Legislature did not state its intent in making this change to section 366.25. "Generally, a substantial change in the language of a statute or constitutional provision indicates an intention to change its meaning." (Mosk v. Superior Court (1979) 25 Cal.3d 474, 493 [159 Cal. Rptr. 494, 601 P.2d 1030].) This court must attempt to ascertain the Legislature's intent.
This court has recently stated: "In ascertaining legislative intent so as to effectuate the purpose of the law, we turn first to the words of the statute, reading the language according to its ordinary and usual import, lending significance to every part where possible, avoiding surplusage, reading the language in context and harmonizing all parts. [Citations.]" (Moseley v. Abrams (1985) 170 Cal. App.3d 355, 361 [216 Cal. Rptr. 40].)
The word "order" is a legal term. Section 1003 of the Code of Civil Procedure defines an "order" as "[e]very direction of a court or judge, made or entered in writing, and not included in a judgment...." This definition applies to both civil actions and special proceedings. (Code Civ. Proc. § 1064.) Most importantly, a court may enforce its lawful orders. (Code Civ. Proc., § 177.)
*408 The word "authorize" has a very different meaning. In defining this word, we cannot turn to a code section but must look instead at its dictionary meaning. "[T]he word `authorize' ... ordinarily denotes affirmative enabling action. Black's Law Dictionary 122 (5th ed. 1979) defines "authorize" as `[t]o empower; to give a right or authority to act.'" (County of Washington v. Gunther (1981) 452 U.S 161, 169 [68 L.Ed.2d 751, 759, 101 S.Ct. 2242].) "Similarly, Webster's Third New International Dictionary 147 (1976) states that the word `authorize' `indicates endowing formally with a power or right to act, usu. with discretionary privileges.'" (Ibid., fn. 9.) (See also Kiseskey v. Carpenter's Trust for So. California (1983) 144 Cal. App.3d 222, 235 [192 Cal. Rptr. 492], citing Webster's Third New International Dictionary (1961) to define the word "authorize.") Clearly, being authorized by a court to do something is much different than being ordered by the court to do it.
Not only did the Legislature substitute the word "authorize" for the word "order" in section 366.25, subdivision (d) (1), it left the word "order" in the other two amended subdivisions. Subdivision (d)(2) reads in part: "If the court finds that it is not likely that the minor can or will be adopted ... the court shall order the appropriate county department to initiate or facilitate the placement of the minor in a home environment that can be reasonably expected to be stable and permanent." (Italics added.) Subdivision (d)(3)(A) reads in part: "If the court finds that it is not likely that the minor can or will be adopted, ... the court may order the care, custody, and control of the minor transferred from the county welfare department or probation department to a licensed foster family agency." (Italics added.) The Legislature's use of "authorize" in one place and "order" in two other places in this statute reflects its intent to change what the juvenile court can do at a permanency planning hearing. "Where the Legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded." (Phillips v. San Luis Obispo County Dept. etc. Regulation (1986) 183 Cal. App.3d 372, 380 [228 Cal. Rptr. 101]; see also Gonzales & Co. v. Department of Alcoholic Bev. Control (1984) 151 Cal. App.3d 172, 178 [198 Cal. Rptr. 479].)
For some unexplainable reason, sections 361.5[4] and 358,[5] in referring to section 366.25, say that the court may "order" the institution of a Civil Code section 232 proceeding at a permanency planning hearing. These statutes are inconsistent with section 366.25. "A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject. *409 [Citations.]" (Hough v. McCarthy (1960) 54 Cal.2d 273, 279 [5 Cal. Rptr. 668, 353 P.2d 276].) However, "a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (REA Enterprises v. California Coastal Zone Conservation Com. (1975) 52 Cal. App.3d 596, 611 [125 Cal. Rptr. 201]; see also People v. Moroney (1944) 24 Cal.2d 638, 643-644 [150 P.2d 888]; Short Stop, Inc. v. Fielder (1971) 17 Cal. App.3d 435, 444 [95 Cal. Rptr. 102].)
Section 366.25 is the only statute in the Welfare and Institutions Code specifically dealing with what a court may do at a permanency planning hearing. In reconciling section 366.25 with those merely referring to it, section 366.25 must govern.
A juvenile court may no longer make a binding order compelling the institution of a Civil Code section 232 proceeding. The court may only authorize the appropriate agency to institute such a proceeding. Because the authorized agency is free to do as it pleases, this authorization does not affect the substantial rights of the child. Therefore, it cannot be appealable as a "subsequent order" within the meaning of section 395. It matters not whether the juvenile court couches this authorization in the form of an order.[6] It matters not whether an appellate court uses the terms "reference order" or "authorization order." What matters, as stated in Candy S., supra, 176 Cal. App.3d 329, is that "the `referenced,' or suggested, Civil Code section 232 action [sic] may never be filed, and if filed, may result favorably to [appellant]. No immediate or substantial prejudice is discerned." (Id., at p. 331.) There should be no appeal from such a mere "authorization."
In the recent case of In re Debra M., supra, 189 Cal. App.3d 1032, the Second Appellate District reached this result not by analyzing the amendment to section 366.25, but by considering the policy underlying this section and the intermediate nature of the authorization allowed by it.
In that case, the juvenile court judge, apparently cognizant of the amendment to section 366.25, referred Debra M. for adoptive planning and for the "possible" filing of a Civil Code section 232 proceeding. The court, speaking through Justice Thaxton Hanson, noted the lack of finality in such a reference. The court also focused on section 366.25's carefully prescribed periods for reporting on and review of the living situation of dependent children. The court saw these requirements as indicative of the legislative concern for *410 the early adoptability of these children, its awareness that the passage of time diminishes the chances of early adoption, and its desire to keep these children from living "in limbo ... while a solution is sought for their care." (In re Debra M., supra, at pp. 1037-1038.) Justice Hanson then so eloquently said: "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (Id., at p. 1038.) Finally, the court concluded: "The Legislature has expressed increasing concern with the perceived and accurate reality that time is of the essence in offering permanent planning for dependent children. We do not think the legislative intent and purpose is best served by rendering appealable, as an order after judgment, an interim ruling merely referring a dependent child for adoptive planning." (Id., at pp. 1038-1039; italics added.)
In light of the 1984 amendment to section 366.25 and the persuasive and insightful reasoning in In re Debra M., the authorization to initiate a termination proceeding under Civil Code section 232 should not be appealable.
The majority raises several points which must be addressed at this time.
The majority is not persuaded that the question of appealability turns on the Legislature's use of the word "authorize" in lieu of the word "order" in section 366.25, subdivision (d)(1). But the majority does not even attempt to show why it believes there is no legal difference between the two words. Furthermore, the majority says that "[t]he order involved here is a delegation of authority to the county or state agency to decide whether or not to institute a parental rights termination action under Civil Code section 232." Thus it concedes that we are dealing with a delegation of authority. But it ignores the fact that courts may enforce their orders. How can something that allows an agency to decide whether to take a particular action be an "order"?
The majority says that "[r]egardless of what the county or state agency decides to do, it acts pursuant to the court's order." But the Joshua S. court pointed out that "the county authorities may, without the juvenile court's reference or authorization, seek termination of parental rights of a ward of the juvenile court. (See In re Shannon W., supra, 69 Cal. App.3d at pp. 962-963.)" (In re Joshua S., supra, 186 Cal. App.3d 147, 154.) Thus, how do we know that the appropriate agency acts pursuant to this authority when it could have sought to terminate parental rights even without the court authorization?
The majority maintains that appealability of the reference cannot depend on whether it is accompanied by an order expressly terminating reunification *411 efforts. It then goes on to say that where the reference does expressly terminate reunification efforts, the effect of the order may have a substantial impact on the rights of the child. The majority reasons that without reunification assistance, the parent may be forced to rebut a charge of "only token efforts" to communicate with the child in a Civil Code section 232 proceeding.
The issue in this case is whether an authorization to institute a Civil Code section 232 proceeding affects the substantial rights of the child and is therefore is appealable. This issue should not be "bootstrapped" to the question of whether the termination of reunification efforts affects these rights and is therefore appealable. Furthermore, why should this court try to prevent certain arguments from possibly being raised at a section 232 proceeding by making an authorization appealable?
The majority also purports to follow the reasoning in Joshua S. that since dependency review orders are appealable and are often made in conjunction with the permanency planning hearing, additional delays caused by appeals from an authorization are not likely to significantly slow the process. First, this is not what the Joshua S. court said. The court did say that "[b]ecause orders emanating from the section 366.25 hearing, other than the reference or authorization order, are appealable [citation], it is unlikely a holding that the authorization order is appealable will add significantly to delays." (In re Joshua S., supra, 186 Cal. App.3d 147, 154.) But we are not dealing with those other orders; we are dealing with an authorization to institute a Civil Code section 232 proceeding. The order of authorization in this case is dated November 25, 1985. By the time this court's decision becomes final, a total of approximately 16 months will have passed, a significant period in the brief duration of childhood. In Lorenzo T. it appears that 14 months elapsed between the order and the filing of the decision on appeal and even in Joshua A. it took 10 months from the time of the November 1985 "orders" to the September 1986 Court of Appeal decision. In my judgment the clear consequence of the majority holding is to significantly impede the desirable goal of early adoption.
NOTES
[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.
[2] As respondent points out, the factual statement in appellant's brief is inadequate. However, instead of aiding this court by setting forth a factual summary in its brief, respondent has compounded the inadequacy of the briefing by submitting an extremely summary brief of its own which contains a few citations to the record but lacks any substantive discussion of the facts of the case.
[1] Unless otherwise indicated, all references are to the Welfare and Institutions Code.
[2] Technically, this is a special proceeding as defined in section 23 of the Code of Civil Procedure. (In re Mark K. (1984) 159 Cal. App.3d 94, 102 [205 Cal. Rptr. 393]; see also 3 Witkin, Cal. Procedure (3d ed. 1985) § 13, pp. 43, 45.)
[3] It is not clear from the opinion whether the court focused on the rights of the child or the mother.
[4] Added by Statutes 1986, chapter 1122, section 13.
[5] As amended by Statutes 1986, chapter 1122, section 10.
[6] In the case before us, the juvenile court's order after hearing read in part as follows: "The matter is hereby ordered transferred to the County Counsel for filing of a Petition pursuant to Civil Code Section 232 within 45 days of today's date."