[No. C004186. Third Dist. July 19, 1989.]

In re ELI F., a Person Coming Under the Juvenile Court Law.
BUTTE COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
DEBBIE F., Defendant and Appellant.

COUNSEL

Jesse S. Kaplan, under appointment by the Court of Appeal, for Defendant and Appellant.

Susan Roff, County Counsel, and David M. McClain, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

SIMS, J.—In this case we consider the appealability of certain orders made by the juvenile court following a permanency planning hearing (Welf. & Inst. Code, § 366.25; further unspecified statutory references are to this code)—an issue partially resolved by recent legislation. We shall conclude most of this appeal must be dismissed, but an order placing the minor in Alabama is reviewable and must be reversed because the juvenile court failed to comply with the Interstate Compact on the Placement of Children (Compact) (Civ. Code, § 264 et seq.).

## FACTUAL AND PROCEDURAL HISTORY

The minor was declared a dependent by the court after his mother (appellant) admitted allegations in a petition filed in August 1986. (§ 300, subd. (a).) The minor was originally detained when appellant was arrested for shoplifting while apparently under the influence of drugs. Subsequently, the police found a syringe and a lipstick container containing methamphetamine in appellant's purse.

By January 1987 appellant had participated in a reunification plan and had made sufficient progress to warrant the minor's placement in the Family Maintenance Program. The minor was ordered into the Family Maintenance Program in February 1987.

A supplemental petition filed in April 1987 stated appellant was found to have extensive needle marks and bruising to her arms which were caused by injecting herself with methamphetamines and heroin. She admitted she was a regular user of cocaine. After appellant admitted the allegations in this petition (§ 300, subds. (a), (d)), the minor was placed in the custody of his maternal grandparents.

In a supplemental petition filed in July 1987 the maternal grandparents stated they were no longer able to provide for the minor's care, custody and control because they could not protect the minor from appellant. On at least one occasion appellant had made verbal threats to kill herself and the minor. In light of the threats, the minor was moved to a confidential foster home.

Appellant was arrested on numerous occasions after January 1987. These arrests include: forgery, burglary, harboring a fugitive, possession of illegal weapons, possession of illegal syringes, and petty theft. In July 1987 appellant was incarcerated and remained so at the time of the permanency planning hearing at issue here.

A contested permanency planning hearing (§ 366.25) was held on March 2, 1988. At the conclusion of this hearing, as pertinent here, the court found there is not a substantial probability the minor will be returned to the custody of his parent within six months and the minor is adoptable. The court also made an order which incorporated by reference recommendation number seven of the social worker's report. That recommendation appears on a standard Butte County form which is materially the same as the form used by the juvenile court clerk for entering the juvenile court's minute order. The form provides: "7. The minor be ordered into the Permanency Planning Program: [¶] (X) 366.25(d)(1): Adoption

"( ) 366.25(d)(2): Guardianship

"( ) 366.25(d)(3): Long-Term Foster Care"

The juvenile court also ordered the child placed in the custody of the maternal aunt in Alabama.

In her appeal from these orders, appellant contends the juvenile court erred by (1) premising its adoption-referral order on the duration of the dependency; (2) choosing adoption, rather than long-term foster care or guardianship, without substantial evidence; (3) finding without substantial evidence that reunification was unlikely; (4) failing to articulate on the record the standard of proof used to enter the adoption-referral order; and (5) placing the child with his maternal aunt in Alabama pending adoption.

We shall conclude the first four contentions attack a nonappealable order and are nonreviewable but the fifth contention is meritorious.

DISCUSSION

I

*Appellant May Not Attack the Adoption-referral Order in This Appeal*

■ The right to appeal is conferred, if at all, only by statute. (*People* v. *Keener* (1961) 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587]; *In re Richard C.* (1979) 89 Cal.App.3d 477, 482 [152 Cal.Rptr. 787]; *In re Corey* (1964) 230 Cal.App.2d 813, 820 [41 Cal.Rptr. 379]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 2, p. 33.)

Section 395 states the general rule governing appeals from section 300 proceedings. (See *In re Corey, supra,* 230 Cal.App.2d at p. 821; *In re Syson* (1960) 184 Cal.App.2d 111, 114-115 [7 Cal.Rptr. 298]; *Moch* v. *Superior Court* (1919) 39 Cal.App. 471, 478 [179 P. 440].) That statute provides in part, "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; . . ."[1] California Rules of

---

[1] Section 800 provides for appeals from delinquency proceedings, and provides in part: "A judgment in a proceeding under Section 601 or 602, or the denial of a motion made pursuant to Section 262, may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment."

Originally there was only one statute controlling appeals from juvenile court orders, which provided in part: "Every judgment or decree of a juvenile court assuming jurisdiction and declaring any person to be a ward of the juvenile court or a person free from the custody and

Court, rule 1396(b) also provides in part: "In proceedings under section 300, the petitioner, minor, and the parent or guardian may appeal from any judgment, order, or decree specified in section 395." (Further rule references are to the California Rules of Court.)

In a case brought under section 300, the juvenile court's dispositional order is a judgment. (§ 360; see *In re Conley* (1966) 244 Cal.App.2d 755, 760 [53 Cal.Rptr. 321] [decided under former § 725].)

As a general rule, section 395 reflects a legislative intent to make appealable any order of a juvenile court after judgment which affects the substantial rights of the minor. (See *In re Corey, supra,* 230 Cal.App.2d at p. 822 [decided under former § 800].)

Permanency planning hearings are mandated by section 366.25. Subdivision (a) of that statute requires the juvenile court to conduct one or more hearings, within time deadlines, "to make a determination regarding the future status of the minor" where the court has previously entered a dispositional order removing the minor from the physical custody of parents and the minor cannot be returned home.

If at a permanency planning hearing the juvenile court determines the minor cannot be returned to the custody of parents or guardian, and there is not a substantial probability the minor will be returned within six months, then subdivision (d) of section 366.25, set out in the margin,[2] commands the juvenile court to make certain findings and orders.

---

control of his parents may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment. . . ." (Stats. 1915, ch. 631, § 23, p. 1248.) This statute was later recodified as section 580. (Stats. 1937, ch. 369, § 580, pp. 1022-1023.)

[2] Section 366.25, subdivision (d) provides in relevant part: "If the court determines that the minor cannot be returned to the physical custody of his or her parent or guardian and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders: [¶] (1) If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code unless the court finds that any of the following conditions exist:

"(A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing this relationship.

"(B) A minor 10 years of age or older objects to termination of parental rights.

"(C) The minor's foster parents, including relative caretakers, are unable to adopt the minor because of exceptional circumstances which do not include an unwillingness to accept le-

Even though permanency planning orders are entered after judgment, during the past several years a large body of case law disputed whether permanency planning orders were or were not appealable. Some cases held the orders appealable. (*In re Linda P.* (1987) 195 Cal.App.3d 99 [240 Cal.Rptr. 474]; *In re Sarah F.* (1987) 191 Cal.App.3d 398 [236 Cal.Rptr. 480]; *In re Lorenzo T.* (1987) 190 Cal.App.3d 888 [235 Cal.Rptr. 680]; *In re Joshua S.* (1986) 186 Cal.App.3d 147 [230 Cal.Rptr. 437].) Others held the orders nonappealable. (*In re Debra M.* (1987) 189 Cal.App.3d 1032 [234 Cal.Rptr. 739]; *In re Lisa M.* (1986) 177 Cal.App.3d 915 [225 Cal.Rptr. 7]; *In re Candy S.* (1985) 176 Cal.App.3d 329 [222 Cal.Rptr. 43]; see *In re Sarah F., supra,* 191 Cal.App.3d at p. 405 (dis. opn. of Benson, J.).) Some of these cases opined that only an order authorizing the filing of a Civil Code section 232 action to terminate parental rights was nonappealable. (*In re Candy S., supra,* 176 Cal.App.3d 329 [affirming other orders discussed in the unpublished portion of the case rather than dismissing the appeal]; *In re Sarah F., supra,* 191 Cal.App.3d at p. 411 (dis. opn. of Benson, J.).)

▇▇▇ Last year, in an apparent attempt to clarify the issue, the Legislature added subdivision (j) to section 366.25 (eff. Jan. 1, 1989), which provides: "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ." (Stats. 1988, ch. 1075, § 6.)

In *In re T.M.* (1988) 206 Cal.App.3d 314 [253 Cal.Rptr. 535], Division Five of the First District Court of Appeal interpreted the legislation as evincing an intent to abort even existing appeals from the proscribed orders. (P. 316.) The Supreme Court denied review in *T.M.* on February 16, 1989, and on February 23, 1989, dismissed review of several cases raising this point. (Rule 29.4(c); see 9 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 722, pp. 695-696.)[3] ▇▇▇ While the denial of review by the Supreme

gal responsibility for the minor, but are willing and capable of providing the minor with a stable and permanent environment and the removal of the minor from the physical custody of his or her foster parents would be seriously detrimental to the emotional well-being of the minor."

This subdivision previously required the court to "order the county counsel, or if there is no county counsel, the district attorney" to initiate an action to terminate parental rights. (Stats. 1984, ch. 1608, § 6, p. 5682.)

[3] All of the cases found the order nonappealable or found the appeal mooted by a subsequent Civil Code section 232 proceeding. (*In re Christopher C.*▇ (Cal.App.) [1st Dist., Div. 1—nonappealable]; *In re Jenny C.* (May 26, 1988) 3029475 [nonpub. opn.] [2d Dist., Div. 1—nonappealable]; *In re Alexis C.* (May 24, 1988) D006038 [nonpub. opn.] [4th Dist., Div. 1—moot]; *In re Erik R.* (Dec. 4, 1987) E004159 [nonpub. opn.] [4th Dist., Div. 2—nonappealable]; *In re Keith W.* (Mar. 21, 1988) E003835 [nonpub. opn.] [4th Dist., Div. 2—nonap-

Court does not normally add weight to the opinion of the District Court of Appeal "it does not follow that such a denial is without significance . . . ." (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; see 9 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, §§ 775-776, pp. 743-747.) ▆▆▆ Given the wholesale disposition of these cases in the face of an appellate interpretation of the new statute, we believe the Supreme Court has made its unspoken views clear. Section 366.25, subdivision (j) resolves the split of authority among the District Courts of Appeal and terminates existing appeals from the orders described in the statute. (*In re T.M., supra,* 206 Cal.App.3d at p. 316.)

However, this conclusion does not end the question before this court. As is apparent in this case, a juvenile court frequently makes several kinds of orders at the conclusion of a permanency planning hearing. Had the Legislature wished to make all such orders nonappealable it would have said so. Moreover, the original bill which added subdivision (j) to section 366.25 (Sen. Bill No. 1860) was amended on April 4, 1988, to make all "Orders determining a permanent plan" nonappealable. (Sen. Amend. to Sen. Bill No. 1860 (1987-1988 Reg. Sess.) Apr. 4, 1988.) However, a legislative committee staff analysis[4] noted: "The phrase 'orders determining a permanent plan' is not clear as to which orders at the permanency planning hearing are not appealable. [¶] In an order at a permanency planning hearing, the court may order long-term foster care for the minor child, order or deny visitation to the parents or guardian, or impose a guardianship and issue letters of guardianship. These are final orders from which an appeal is appropriate. Should not the court orders which are not to be appealable be limited to those orders which require the filing of a petition to terminate parental rights or to establish a guardianship?" (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1860 (1987-1988 Reg. Sess.) as amended June 16, 1988.) On June 29, 1988, the bill was amended to prohibit appeals from "an order authorizing the termination of parental rights or the initiation of guardianship proceedings." (Assem. Amend. to Sen. Bill No. 1860 (1987-1988 Reg. Sess.) June 29, 1988.) On August 26, 1988, the language was changed to its present form. (Assem. Amend. to Sen. Bill No. 1860 (1987-1988 Reg. Sess.) Aug. 26, 1988.)

Thus we conclude that by its enactment of subdivision (j) of section 366.25 the Legislature intended to preclude appeals *only* from an order

pealable]; *In re Sharon W.*▆ (Cal.App.) [4th Dist., Div. 3—nonappealable]; *In re Julia C.*▆ (Cal.App.) [6th Dist.—appealable, but moot].)

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

[4] The Supreme Court recently endorsed the value of such legislative materials. (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

authorizing the filing of a parental termination action or initiating a guardianship proceeding. Other contemporaneous orders made during a permanency planning hearing remain appealable pursuant to the general rule of section 395 and rule 1396(b).

■ We must determine which portions of this appeal, if any, are made nonappealable by subdivision (j) of section 366.25. As noted, the juvenile court used a standard Butte County form to designate a permanent plan of adoption. Though the court did not make a separate, explicit, order authorizing the filing of a Civil Code section 232 petition, it made the predicate findings for such an order and cited subdivision (d)(1) of section 366.25 which makes the issuance of such an order mandatory upon the juvenile court. (See fn. 2, *ante*.) In addition, rule 1379(c)(3) provides in part, "At a permanency planning hearing, . . . the court shall consider only whether to order the institution of termination proceedings, the establishment of a legal guardianship, or long-term foster care." The parties treat the adoption referral order as embracing an authorization to file a parental termination action, and we interpret the order as they do, since the law disregards trifles (Civ. Code, § 3533) and respects form less than substance. (Civ. Code, § 3528.)[5]

In her brief, appellant does not expressly identify the order(s) she seeks vacated should her contentions of error succeed, except that she clearly challenges the order placing the child in Alabama. We must therefore examine each of appellant's challenges to determine which order in fact is being attacked.

Appellant's first challenge is to the trial court's determination it was required to impose a permanent plan of adoption due to the duration of the dependency. Her second challenge is to the sufficiency of the evidence used to select adoption, as opposed to long-term foster care or guardianship, as the permanent plan. Appellant also challenges the court's finding reunification was not likely within the next six months and contends the court failed to articulate the standard of proof it used at the hearing. These contentions are designed to overturn the court's order "that authorizes the filing of a petition to terminate parental rights," and are not cognizable on appeal. (§ 366.25, subd. (j); *In re T.M., supra,* 206 Cal.App.3d at p. 315.)[6]

---

[5] However, Butte County would be well advised to trifle with its forms and conform them to the applicable statutes.

[6] Assuming for purposes of argument we have the discretion to treat the appeal as a petition for an extraordinary writ, we decline to do so in this case.

## II

*The Juvenile Court Erroneously Placed the Minor in Alabama*

Appellant also contends there is insufficient evidence to support the court's order placing the child with his aunt in Alabama.[7] ■ This order does not authorize the filing of a petition to terminate parental rights; rather, the Alabama placement order addresses the temporary placement of the minor and concerns matters wholly separate from the order authorizing adoption. The previously discussed legislative history of subdivision (j) of section 366.25 suggests the Alabama placement order is precisely the kind of order that should remain appealable. We conclude the placement order is appealable (§ 395; rule 1396(b)) and turn to the merits.

■ We requested supplemental briefing to consider the effect of the Compact. (Civ. Code, § 264 et seq.; Ala. Code, § 44-2-20 (1975).)

California and Alabama are each signatories to the Compact. (Civ. Code, § 264 et seq.; Ala. Code, § 44-2-20 (1975).) The various articles comprising the Compact are set out in Civil Code section 265.[8] Article 1 of the Compact states in relevant part: "It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that:

"(a) Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care.

"(b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child.

"(c) The proper authorities of the state from which the placement is made may obtain the most complete information on the basis on which to evaluate a projected placement before it is made."

The juvenile court is a "sending agency" under the Compact. (Compact, art. 2, subd. (b); 61 Ops.Cal.Atty.Gen. 535, 539 (1978).) Article 3 of the

---

[7] The court granted "discretion to CPS to place the minor with the maternal aunt, Lisa M[ ]." The written order states "placement at the discretion of the aunt." The parties do not dispute the order effectively placed the minor in Alabama.

[8] The provisions of the Compact are clarified and supplemented by Civil Code sections 266-274.

Compact provides in part, "(a) No sending agency shall send, . . . any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.

"(b) Prior to sending, . . . the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, . . .

". . . . . . . . . . . . . . . . . . . .

"(d) The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child."

Following the placement of a child under the Compact, the sending agency retains jurisdiction "sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, . . ." (Compact, art. 5, subd. (a).)

The social worker in this case contacted the authorities in Alabama to obtain information regarding the suitability of the home of the minor's aunt. The report submitted to the juvenile court stated "Unfortunately Intersta[t]e Compact for the Placement of Children (ICPC) is a cumbersome process and there has been no communicat[i]on as yet from Alabama regarding this matter." At the permanency planning hearing, counsel for child protective services stated, "I think there has been interstate compact approval for the home in Alabama." No other information respecting Compact compliance—whether in oral or written form—was before the juvenile court.

The juvenile court thus had no information before it regarding the stability, safety, or even existence of the home in Alabama to which it sent the minor.[9] Here the court received no written notice from Alabama as required

---

[9] County attached to its supplemental brief a purported copy of the request sent to Alabama. It suggests Alabama authorities gave *verbal* permission for the child to be sent to Ala-

by article 3, subdivision (d) of the Compact and had no information about the home sufficient to supervise the care of the child as contemplated by article 5.

"The sending, . . . into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children . . . ." (Compact, art. 4.) While the Compact prescribes no particular remedy for the violation of its terms, and does not explicitly state the placement of a child in contravention of the terms of the Compact is remediable, we believe the violation of the Compact in this case requires reversal of the juvenile court's placement order.

The juvenile court was required to be knowledgeable about the placement of the minor with his aunt, a relative. "In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative. *In determining whether such a placement is appropriate,* the probation officer and *court shall consider the ability of the relative to provide a secure and stable environment for the child. Factors to be considered in that assessment include, but are not limited to, the good moral character of the relative*; *the ability of the relative to exercise proper and effective care and control of the child*; *the ability of the relative to provide a home and the necessities of life for the child*; which relative is most likely to protect the child from his or her parents; which relative is most likely to facilitate visitation with the child's other relatives and to facilitate reunification efforts with the parents; *and the best interests of the child.*" (§ 361.3, subd. (a), italics added.) This statute requires the juvenile court to be knowledgeable about a minor's placement regardless of whether the placement is within or without the State of California. Where placement is outside this state, at a minimum the statute envisions compliance with the Compact.

Moreover, the suitability of the placement must be reflected in the record of the proceedings before the juvenile court, so that placement may be contested if warranted and so that the juvenile court's decision may be subject to meaningful appellate review. (See, e.g., *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1133 [200 Cal.Rptr. 789]; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 535-536 [184 Cal.Rptr. 778].)

---

bama. This document is not in the record on appeal, was not before the juvenile court, and provides no information about the condition of the home in Alabama.

Here the record fails to disclose any information about the aunt herself, her home, or her ability to provide care for the minor. Since the juvenile court's placement order violated both the Compact and section 361.3, subdivision (a), the order must be reversed.

### DISPOSITION

The order placing the minor with the maternal aunt is reversed and the case is remanded to the juvenile court to reconsider the placement of the minor. In all other respects the appeal is dismissed.

Puglia, P. J., and Scotland, J., concurred.