[No. E006890. Fourth Dist., Div. Two. Nov. 21, 1990.]

In re VIOLET J., a Person Coming Under the Juvenile Court Law.
COUNTY OF RIVERSIDE DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
GIDEON J., Defendant and Appellant.

COUNSEL

Lori Lee Fehr, under appointment by the Court of Appeal, for Defendant and Appellant.

William C. Katzenstein, County Counsel, and Byron C. Smith, Deputy County Counsel, for Plaintiff and Respondent.

Deborah J. Mohr-Walker for Minor.

OPINION

**HOLLENHORST, Acting P. J.**—Gideon J., father of dependent minor Violet J., appeals from a juvenile court order after a permanency planning hearing. The order directs the department of public social services (DPSS) to initiate proceedings pursuant to Civil Code section 232 to free minor for adoption and provides that the father may continue to visit minor even if he is incarcerated.[1] On appeal, the father contends that (1) an order terminating reunification and making a permanent plan of adoption affects his substantial rights and is an appealable order; (2) the trial court's finding under Welfare and Institutions Code section 366.25 authorizing proceedings to terminate reunification and parental rights under Civil Code section 232 was not supported by substantial evidence and was prejudicial;[2] (3) it was in excess of the court's jurisdiction to order a permanency plan of adoption and the termination of parental rights under sections 366 and 366.1 and Civil Code section 232; (4) it was error for the court to consider the father's possible incarceration in ordering the termination of reunification services; (5) the trial court erred when it failed to consider whether termination of parental rights was the least detrimental alternative available.

FACTS

At time of minor's birth both she and her mother tested positive for PCP. Apparently because of the presence of the drug in her system, minor was a

---

[1] At the time of the permanency planning hearing, father was awaiting sentencing on a public offense.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

high-risk infant who required 24-hour monitoring on an apnea machine. When minor was two months old DPSS filed a dependency petition alleging that minor came within the provisions of section 300, subdivisions (a) and (d) in that her mother had failed to use the apnea machine provided for minor and refused to undergo blood testing and her father, who was incarcerated, was unable to care for her. The juvenile court declared minor a dependent of the court pursuant to section 300, subdivision (a) and placed her in foster care.

DPSS provided reunification plans to minor's parents. The father's plan required that he contact minor's social worker and sign release forms so that the social worker could discuss his case with his correctional counselor, participate in family counseling if provided at the correctional facility, develop a plan to support himself and acquire adequate housing before leaving prison, contact the social worker upon leaving prison, follow the correctional facility rules, and meet all provisions of parole when released from incarceration.

In preparation for the six-month review of minor's case, the social worker made a report to the juvenile court in which she indicated that minor's father had complied with all those provisions of the reunification plan which he could meet while incarcerated. She also reported that the father could not attend counseling while incarcerated because no counseling services were provided at the camp where he was housed. Accordingly, at the review hearing the court ordered that the father's reunification plan be modified to require that he attend counseling after being released from incarceration.

Shortly after the six-month review hearing, the father was released from prison. He contacted the social worker on the day of his release and immediately began visiting minor on a twice-monthly basis. At the time of the 12-month review and permanency planning hearing, the father had missed only 2 scheduled visits with his daughter; however, he had not yet begun psychological counseling or parenting classes and appeared very resistant to attending counseling. The social worker thought that his living quarters, in a rooming house with four parolees who had a very transient life-style, were an inappropriate setting for raising a child.

At the 12-month review and permanency planning hearing the juvenile court continued minor as a dependent in foster home placement; however, it found that there was a substantial probability that minor would be returned to the custody of a parent within 6 months and continued the permanency planning hearing during that time period. It also approved continuance of reunification services to both parents and the modification of the father's

reunification plan to include requirements that the father submit to drug testing, complete a parenting class and attend classes or programs to learn how to deal with minor's special medical needs. Finally, the court granted minor's foster parents, who had been caring for her since she was declared a dependent, de facto parent status.

During the ensuing six months the father completed a parenting class and learned how to use the apnea monitor. He began individual psychological counseling about halfway through this time period and also began attending group counseling sessions for parolees. After attending three individual counseling sessions, however, the father was terminated from counseling for missing two scheduled appointments. He submitted to drug testing and was drug-free at the time of each test. The father moved out of the rooming house for awhile during this time period, but had returned to the rooming house by the time of the next scheduled review.

The father continued to visit minor on a fairly regular basis, though he began to come late and missed several visits entirely. During one visit he appeared to be under the influence of drugs or alcohol. Each of the father's visits was marred by the fact that minor was very wary of him, cried, and would not go to him though she would submit to being held by other relatives with whom she was less familiar. Minor's doctor voiced some concern for minor's health during these visits because she was still subject to apnea attacks and the crying exacerbated her condition.

At the 18-month review and permanency planning hearing, DPSS recommended that the juvenile court refer minor for Civil Code section 232 proceedings to free her for adoption. The court ordered DPSS to stop providing reunification services to the mother; however, it found that reunification of minor and her father was likely within the next six months, ordered the father to continue individual therapy and to enroll in CPR training, ordered DPSS to do home evaluations of the father's home and his sister's home and continued the permanency planning hearing for another six months. The court also ordered DPSS to assign another social worker to minor's case, apparently because the father and the social worker were experiencing a personality conflict.

The father continued to visit minor after the 18-month hearing. Though he missed, according to his own brief, seven scheduled visits between October, 1988 and the end of January 1989, he completed thirteen visits, some of them unsupervised. Minor began during this period to go to and play with her father, but she still experienced crying and some brief moments of apnea connected with the visits, as well as having diarrhea and sleeping difficulties. She also experienced weight loss, loss of appetite and loss of hair

during this period. Before one visit in January of 1989 she threw her food, flung herself on the floor and banged her head on the wall. The father also located a new psychological counselor and attended six counseling sessions. In addition he completed a CPR class.

On January 31, 1989, police arrested the father for felony possession of cocaine for purpose of sale. While the cocaine charge was pending the father served several months for violation of parole. He was convicted of the cocaine charge and at the time of the contested 24-month review and permanency planning hearing in June of 1989 he had just been released from custody and was awaiting sentencing on the cocaine charge. In light of the fact that he had a previous felony conviction (physical abuse of his former wife including the rupturing of her spleen) his parole officer had indicated that the trial court might sentence him to at least some time in jail.

The father testified at the hearing that he had obtained housing with his sister and that she had told him he might remain with her if he got custody of minor. He also stated that he was on a priority list for housing assistance, that the so-called "rooming house" in which he had stayed earlier was in fact his grandmother's house and that no other ex-felons had lived there.

The juvenile court found that return of minor to her father at the time of the hearing would be detrimental to her. It did not find that minor was likely to be returned to her father within the next six months. Consequently, the court went on to consider a permanent plan for minor. It determined that adoption by minor's foster parents was the best plan for her and ordered DPSS to initiate freedom-from-parental-control proceedings pursuant to Civil Code section 232. While the court found that it would not be beneficial to minor to maintain contact with her father, it nevertheless ordered that visitation continue on a monthly basis and included a jail visitation order in the event the father had to return to custody.

DISCUSSION

I.

APPEALABILITY OF ORDERS

■ The father initially contends that the juvenile court's order that DPSS file a petition for release of minor from his care and control pursuant to Civil Code section 232 is an appealable order. He argues that, because the order effectively cuts off his reunification services, it "extinguishes any effort for reunification," and thus affects his substantial rights as a parent. This contention actually involves two separate questions of appealability: wheth-

er a party is aggrieved by an order requiring the initiation of Civil Code section 232 proceedings and whether a party's substantial rights are affected by the termination of reunification services.

## A. *Order for Initiation of Freedom-from-parental-control Action*

The court's order that DPSS initiate freedom from custody proceedings is an interim order which merely continues minor's placement with the foster parents while simultaneously directing the initiation of Civil Code section 232 proceedings. The outcome of such proceedings may in fact be favorable to the father. "For a valid appeal one must be injuriously affected by the court's ruling in an immediate and substantial manner, and *not* as a nominal or remote consequence." (*In re Candy S.* (1985) 176 Cal.App.3d 329, 331 [222 Cal.Rptr. 43].) Because the father in this case is not "aggrieved" under the law by the order to initiate Civil Code 232 proceedings, an appeal does not lie from that order. (*Ibid.*; *In re Debra M.* (1987) 189 Cal.App.3d 1032, 1037-1039 [234 Cal.Rptr. 739].)[3]

A permanency planning order is subject to review by writ of mandate, however, and we take judicial notice pursuant to Evidence Code section 459 that the father petitioned for such a writ before this court in case No. E007472. (§ 366.25, subd. (j); see *In re Albert B.* (1989) 215 Cal.App.3d 361, 370-373 [263 Cal.Rptr. 694].) The petition was summarily denied on January 4, 1990, and it has not been renewed.

## B. *Termination of Reunification Services*

An order entered after a review and permanency planning hearing, which is separate from the order directing the filing of a Civil Code section 232 proceeding and self-executing, is arguably subject to review on appeal, if it has a substantial impact on the rights of parent and minor. (*In re Kristin W., supra*, 222 Cal.App.3d.at p. 248; see also *In re Sarah F.* (1987) 191 Cal.App.3d 398, 403 [236 Cal.Rptr. 480].) For instance, an order which terminates visitation between parent and minor may force a parent to rebut

---

[3] At oral argument the father maintained, citing *In re Kristin W.* (1990) 222 Cal.App.3d 234 [271 Cal.Rptr. 629], that this court could review the order to initiate freedom-from-custody proceedings by direct appeal because he had already petitioned for a writ of mandate on this issue, which this court had summarily denied. *Kristin W.* does not, however, stand for such a proposition. Rather, in *Kristin W.* the appellate court observed that issues such as the termination of visitation between a parent and child should be raised on appeal even if also raised in a petition for a writ of mandate, because they would not be given full appellate review despite an appellant's right to such review if a court of appeal summarily denied the petition for writ of mandate and the California Supreme Court did not give review thereafter. (*Id.*, at p. 249.) *Kristin W.* in fact holds that "section 366.25, subdivision (j) removes any possibility of filing a direct appeal challenging the authorization order." (*Id.*, at p. 247.)

an allegation of abandonment in the later 232 action. (*Kristin W., supra,* at p. 248; *Sarah F., supra,* at p. 403.)

Such is not the case in the matter before us. The court made no express order terminating reunification services to the father and it ordered that visitation, perhaps the most important component of reunification, continue pending further developments in the case. From the record before us it appears that at the time of the hearing the father had only two components of the reunification plan left to finish—completing individual counseling and locating adequate housing. According to the father's testimony, he was participating actively in individual counseling and had already been placed on a priority list for housing assistance. This court fails to see how termination of reunification assistance by DPSS would interfere with the father's ability to finish these components. The only barrier to such completion that we perceive is the likelihood that the father would be incarcerated in the very near future; responsibility for this lies with neither DPSS nor the juvenile court.

■ Even if we were to conclude that the implied termination of reunification services except for visitation in this case were appealable, we would conclude that the juvenile court did not err in effectively terminating such services. At the time of the hearing minor had never been in her father's custody. She had lived with her foster parents for approximately 27 months and the juvenile court had extended reunification services to her father for a period well in excess of the 18 months permitted under sections 366.21 and 366.25. (See *In re Emily L.* (1989) 212 Cal.App.3d 734, 741 [260 Cal.Rptr. 810].) Nevertheless, the father had not completed all of the requirements of the reunification plan, minor still experienced great difficulty in relating to her father, the father had just been released from a months-long period of incarceration and was facing the likelihood that he would be incarcerated again in a matter of weeks. Given these circumstances and the necessity for stability in minor's life, the court would have been justified in terminating all reunification services to the father pending filing of a Civil Code section 232 petition.[4]

### JURISDICTION OF THE COURT

The father contends that the juvenile court lacked jurisdiction to order a permanency plan of adoption for minor and to direct that DPSS initiate

---

[4]The father argues that the juvenile court erred in taking into account his possible incarceration in deciding to terminate his reunification services. As we noted above, however, the court did not terminate all reunification services. It expressly ordered that the father have jail visitation with minor and reserved a decision on prison visitation until such time as it learned whether or not he had been sentenced to prison.

Civil Code section 232 proceedings because the court improperly shifted the basis for the dependency proceedings against the father from the fact of his incarceration and consequent incapacity to care for minor to his failure to complete individual counseling. This court refuses to entertain this contention for the very simple reason that at the time of the permanency planning hearing the father stood in virtually the same position as he had when minor was first taken into custody: though not incarcerated at the time of the hearing, he had just completed a sentence of several months on a parole violation and was awaiting sentencing after conviction of a second felony for which he expected to at least serve some time in jail. Thus, whether or not he should have been required to complete a course of individual therapy as part of his reunification plan (we do not decide if such a requirement was proper), his problems with incarceration were still interfering with his ability to parent his daughter.

The other issues raised in the father's briefs are not cognizable on appeal because they are only subissues of the question of the propriety of the order requiring DPSS to file a petition to free minor from the custody and control of her parents.

### DISPOSITION

The appeal from that part of the juvenile court's order which directs the filing of a petition pursuant to Civil Code section 232 is dismissed; all other parts of the order appealed from are affirmed.

Dabney, J., and Timlin, J., concurred.